# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**CLAUDIA M. BRINGE**
        **Plaintiff,**

      v.                                     **Case No. 08-C-1025**

**MICHAEL ASTRUE,**
**Commissioner of the Social Security Administration,**
        **Defendant.**

## DECISION AND ORDER

Plaintiff Claudia Bringe brought this action for judicial review of the denial of her application for Supplemental Security Income ("SSI") benefits. On June 10, 2009, I reversed and remanded for further proceedings pursuant to 42 U.S.C. § 405(g), sentence four. Plaintiff now moves for an award of attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.

## I. EAJA STANDARD

The EAJA provides that a litigant in a civil suit against the federal government is entitled to recover her attorneys' fees if: (1) she was the "prevailing party"; (2) the government's position was not "substantially justified"; (3) there are no "special circumstances" that would make an award unjust; and (4) she filed a timely and complete application with the district court. Stewart v. Astrue, 561 F.3d 679, 683 (7th Cir. 2009); Cunningham v. Barnhart, 440 F.3d 862, 863 (7th Cir. 2006). Because I remanded the case under sentence four, entering judgment in plaintiff's favor, she is the prevailing party in this case. See Shalala v. Schaefer, 509 U.S. 292, 300-02 (1993). Plaintiff's application – filed within thirty days of when the judgment became final (i.e., unappealable) – is timely, see Richmond v. Chater, 94 F.3d 263, 266 (7th Cir. 1996), and the Commissioner points to no

special circumstances that would make a fee award unjust, see Wirth v. Barnhart, 325 F. Supp. 2d 911, 913 (E.D. Wis. 2004) (noting that it is the Commissioner's burden to demonstrate special circumstances).[1] However, the Commissioner argues that the motion should be denied because the government's position was substantially justified.

The Commissioner bears the burden of demonstrating substantial justification. Golembiewski v. Barnhart, 382 F.3d 721, 724 (7th Cir. 2004). "A position taken by the Commissioner is substantially justified if it has a reasonable basis in fact and law, and if there is a reasonable connection between the facts and the legal theory." Stewart, 561 F.3d at 683. The government's position must be justified in substance or in the main, that is, justified to a degree that could satisfy a reasonable person. Pierce v. Underwood, 487 U.S. 552, 565 (1988). Although the court makes just one determination on the issue for the entire action, attorneys' fees may be awarded if either the Commissioner's pre-litigation conduct (including the Administrative Law Judge's decision) or his litigation position lacked substantial justification. Cunningham, 440 F.3d at 863-64. In other words, "fees may be awarded in cases where the government's prelitigation conduct was not substantially justified even though its litigating position may have been substantially justified and vice versa." Marcus v. Shalala, 17 F.3d 1033, 1036 (7th Cir. 1994).

## II. DISCUSSION

**A.     Underlying Merits Decision**

Plaintiff argued that the ALJ erred in evaluating her residual functional capacity ("RFC") for work and the credibility of her testimony. I agreed.

---

[1]The record also establishes that plaintiff's net worth is less than $2,000,000. (R. 4.)

First, despite noting that the case "essentially comes down to the issue of pain and credibility" (Tr. at 24), the ALJ failed to make an explicit credibility finding, as required by SSR 96-7p and the case-law. See, e.g., Golembiewski v. Barnhart, 322 F.3d 912, 916 (7th Cir. 2003). The ALJ stated at another point in the decision that "a number of plaintiff's complaints and alleged medical conditions are either not supported by the medical evidence or are nowhere near as painful or incapacitating as plaintiff claimed." (Tr. at 24.) But he failed to specify which conditions were unsupported by the evidence and which plaintiff supposedly blew out of proportion. I further concluded that the ALJ's violation of SSR 96-7p was not harmless. Plaintiff's claimed symptoms and limitations, if believed, precluded even sedentary work.

Second, the ALJ failed to provide good reasons for affording Dr. Dawson's March 28, 2008 treating source report – which limited plaintiff to less than sedentary work – "little weight." The ALJ stated that the report was "inconsistent with the objective medical evidence" and in "stark contrast [to] his own contemporaneous progress notes." (Tr. at 25.) Aside from quoting one progress note, in which Dr. Dawson stated that plaintiff's "radicular pain has resolved" (Tr. at 379; 25), the ALJ failed specify how the notes contradicted the report. Further, subsequent treatment notes showed that plaintiff's pain and radicular symptoms had <u>not</u> gone away (Tr. at 375; 459), evidence the ALJ ignored. Contemporaneous notes from various other providers recorded severe restrictions, not inconsistent with those contained in Dr. Dawson's March 2008 report (Tr. at 529; 526; 518-19; 436; 477; 403; 400), evidence the ALJ also failed to consider in evaluating Dr. Dawson's report.

The "objective medical evidence" the ALJ relied upon also failed to support rejection of Dr. Dawson's report. The ALJ compared Dr. Dawson's opinion to that of an orthopedist,

3

Dr. Schultz, who found no knee instability; the neurological exams, which found intact muscle strength, sensation and reflexes; and the EMG, which revealed "mild" abnormalities. (Tr. at 25.) But Dr. Schultz limited plaintiff from squatting, repetitive stair climbing, or prolonged walking (Tr. at 532), restrictions consistent with those imposed by Dr. Dawson (Tr. at 398). The ALJ acknowledged Dr. Schultz's restrictions earlier in his decision, but opined that Dr. Schultz "was probably being generous with [plaintiff] and giving her considerable benefit of the doubt." (Tr. at 24) The ALJ failed to explain the basis for this assertion, and his claim that Dr. Schultz treated plaintiff for a knee contusion and only "speculat[ed] as to some degree of chondromalacia" (Tr. at 24) is wholly unsupported by the record. The finding of chondromalacia, also noted by Dr. Dawson, was based on an MRI (Tr. at 401; 531), not speculation. Dr. Schultz, on review of the MRI, wrote that "there is evidence of marked lateral subluxation of the patella in addition to chondromalacia of the patellofemoral joint." (Tr. at 531.) I noted that a lay ALJ may not simply reject medical evidence in this manner.

The ALJ wrote that Dr. Dawson's more recent notes point to "definite functional overlay tendencies on [plaintiff's] part." (Tr. at 25.) But the fact that plaintiff's anxiety perhaps exacerbated her physical symptoms, as Dr. Dawson believed (Tr. at 414), did not mean that she was faking or that Dr. Dawson was overreaching in his report. "Pain is always subjective in the sense of being experienced in the brain. The question whether the experience is more acute because of a psychiatric condition is different from the question whether the applicant is pretending to experience pain, or more pain than she actually feels." Carradine v. Barnhart, 360 F.3d 751, 754 (7th Cir. 2004). The ALJ failed to appreciate the difference.

4

Third, the ALJ mishandled plaintiff's diagnosis of fibromyalgia. The ALJ first questioned the diagnosis, stating that it "underscores the general lack of 'hard' objective findings, only multiple tender points." (Tr. at 25.) But as the Seventh Circuit has explained, tender points <u>are</u> "objective" evidence of fibromyalgia:

> [The] cause or causes [of fibromyalgia] are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and – the only symptom that discriminates between it and other diseases of a rheumatic character – multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.

<u>Sarchet v. Chater</u>, 78 F.3d 305, 306 (7th Cir. 1996). The ALJ further stated that if plaintiff "does indeed suffer from fibromyalgia, a diagnosis which has only recently been raised based in large part on subjective complaints of tenderness, the undersigned believes that it would not prevent [her] from performing at least sedentary work." (Tr. at 25.) Dr. Rosler diagnosed plaintiff with fibromyalgia, finding fifteen of eighteen tender spots. (Tr. at 537.) In the absence of contrary evidence, it was improper for the lay ALJ to reject a diagnosis of fibromyalgia by a medical doctor, or to assume that the diagnosis had been made just because the doctors did not know how else to label plaintiff's complaints. See <u>Alexander v. Barnhart</u>, 287 F. Supp. 2d 944, 963-65 (E.D. Wis. 2003). As the Seventh Circuit has acknowledged, fibromyalgia is generally not disabling, <u>Sarchet</u>, 78 F.3d at 307, but I concluded that plaintiff was entitled to re-evaluation under appropriate standards.

In sum, I concluded that "the ALJ simply marginalized [Dr. Dawson's] opinions without a sound explanation and then went on to conclude that neither [plaintiff's] own testimony nor the remaining medical evidence supported her subjective complaints of pain." <u>Moss v. Astrue</u>, 555 F.3d 556, 561 (7th Cir. 2009). On remand, I required the ALJ to re-

5

evaluate the medical evidence from all sources, the combined effects of plaintiff's impairments, the credibility of the testimony under SSR 96-7p, and the treating source report under 96-2p.[2] After re-considering RFC, I required the ALJ to determine whether the testimony of a vocational expert was required in order to decide whether plaintiff could perform other jobs.

**B.     Substantial Justification Analysis**

Regarding the credibility issue, the Commissioner argues that even though the ALJ failed to sufficiently articulate his reasoning, the ALJ had a reasonable basis for rendering his finding. The Commissioner then reviews some of the evidence discussed by the ALJ. The Commissioner concludes that, in light of this evidence, the ALJ's decision evinced a reasonable basis for questioning plaintiff's allegations of total disability, even if he committed an error of form by failing to thoroughly explain why those factors led to his credibility finding. Moreover, the Commissioner argues that it was reasonable for him to defend the ALJ's decision based on the strength of the reasons found throughout the decision.

The ALJ's failure to make an explicit credibility finding was not merely an error of form or articulation, but rather constituted clear legal error. See Golembiewski, 322 F.3d at 916 ("[T]he cases make clear that the ALJ must specify the reasons for his finding so that the applicant and subsequent reviewers will have a fair sense of the weight given to the applicant's testimony."). Merely summarizing the testimony, as the ALJ did here, is insufficient. See Eggerson v. Astrue, 581 F. Supp. 2d 961, 967 (N.D. Ill. 2008). The Commissioner's defense of his litigation position also runs afoul of controlling precedent.

---

[2]I rejected plaintiff's arguments that the ALJ failed to consider the effects of her obesity and in failing to incorporate the "mild" mental limitations in the RFC.

6
Case 2:08-cv-01025-LA   Filed 11/07/09   Page 6 of 8   Document 24

See Golembiewski, 382 F.3d at 724 ("We found that the Commissioner's defense of the ALJ's decision failed because she argued that the ALJ's credibility determination could be 'implied,' contrary to her own ruling, and she relied upon facts not discussed by the ALJ to try and bolster his credibility determination."); see also Stewart, 561 F.3d at 684 ("[A]n ALJ must articulate in a rational manner the reasons for his assessment of a claimant's residual functional capacity, and in reviewing that determination a court must confine itself to the reasons supplied by the ALJ."). An award of fees is appropriate when the Commissioner contravenes long-standing agency regulations and judicial precedent. See Stewart, 561 F.3d at 684.

Regarding the evaluation of Dr. Dawson's report, the Commissioner contends that although I ultimately found that substantial evidence did not support the ALJ's conclusion, the ALJ nonetheless relied on much evidence that could have supported the RFC finding. The Commissioner then proceeds to review some of that evidence.

Weighing the medical evidence is a task for the ALJ, not the court, but the cases make clear that the ALJ may not select and discuss only that evidence in support of his decision, ignoring the evidence to the contrary. See, e.g., Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994). Nor may the ALJ reject medical evidence based on his own lay opinion. See Rohan v. Chater, 98 F.3d 966, 970-71 (7th Cir. 1995). As discussed above, the ALJ violated both of these directives in this case. Finally, the Commissioner offers no defense of the ALJ's mishandling of the fibromyalgia issue.[3]

---

[3]Nor does the Commissioner discuss my rejection of plaintiff's obesity and mental RFC arguments. In any event, the EAJA determination is based on the government's overall position, rather than argument counting. See Stewart, 561 F.3d at 683-84.

For all of these reasons, I find that the Commissioner has failed to demonstrate that the government's position was substantially justified. Therefore, plaintiff is entitled to an award of attorney's fees.

### III.  CONCLUSION

The Commissioner offers no challenge to the amount sought, and on review of plaintiff's motion and supporting papers I find the request reasonable, both as to the rate and the number of hours requested.

**THEREFORE, IT IS ORDERED** that plaintiff's motion for an award of attorney's fees (R. 28) is **GRANTED**, and plaintiff's attorney, Thomas Bush, is awarded fees in the amount of $5546.25.

Dated at Milwaukee, Wisconsin, this 7th day of November, 2009.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge